State, ex rel. Easterday, v. Howe.

---

STATE, EX REL. MARTIN L. EASTERDAY, V. MARTIN HOWE.

[FILED JANUARY 29, 1890.]

**1. Statutes: CONSTRUCTION.** When statutes are so clearly inconsistent with and repugnant to each other that both cannot be executed, the last in time prevails.

**2. Cities of First Class: JUSTICES OF THE PEACE.** Cities of the first class are entitled to three justices of the peace, one to be elected from each of the three districts by the qualified electors of said district.

**3. Elections: BALLOTS: WORDING.** At an election held in the third district of the city of Lincoln for the election of a justice of the peace therein, ballots were cast designating the office "For justice of the peace for the First district," and others were cast therein "For justice of the peace for the Third district," *held,* that the words describing the district did not constitute a part of the legal designation of the office, and should be treated as surplusage.

**4. ———: IMPERFECT CANVASS: MANDAMUS.** Where the board of canvassers of an election have canvassed but a portion of the returns and issued a certificate of election, *mandamus* will lie in a proper case to compel them to reassemble and canvass the returns correctly, and issue a certificate to the one found elected from the whole returns, notwithstanding the person to whom the certificate of election had been issued had qualified and entered upon the discharge of the duties of the office.

ORIGINAL application for *mandamus*.

*N. Z. Snell, W. J. Bryan,* and *A. S. Tibbets,* for relator, cited: *State v. Stearns,* 11 Neb., 104; *State v. Wilson,* 24 Id., 139; *State v. Dinsmore,* 5 Id., 145; *Long v. State,* 17 Id., 65; *Coffey v. Edmonds,* 58 Cal., 521; *Inglis v. Shepherd,* 67 Id., 469; *Strong, Petitioner,* 20 Pick. [Mass.], 484; *Dean v. Field,* 5 Cong. El. Cases, 190; 6 Am. & Eng. Encyc. of Law, 344.

*Charles L. Hall (Adams, Lansing & Scott,* with him), for respondent, cited: *State v. Peacock,* 15 Neb., 443; *State v. Hill,* 20 Id., 119; Moses, Mandamus, 150; Angell & Ames, Corp. [11th Ed.], sec. 702; Paine, Elections, sec. 928; *Rex v. Colchester,* 2 T. R. [Eng.], 260; *St. Louis County Court v. Sparks,* 10 Mo., 117; *State v. Rodman,* 43 Id., 260; *People v. Corporation of N. Y.,* 3 Johns. Cas. [N. Y.], 79; *People v. Supervisors,* 12 Barb. [N. Y.], 222; *Williams v. Com'rs,* 35 Me., 345; *French v. Cowan,* 79 Id., 435; *Howard v. Gage,* 6 Mass., 464; *Clark v. Board,* 126 Ind., 282; *State v. Board,* 49 N. J. L., 349; *People v. Board,* 13 N. E. Rep. [N. Y.], 920; *State v. Deane,* 1 So. Rep. [Fla.], 698; *Ingerson v. Berry,* 14 Ohio St., 325; *Bonner v. State,* 7 Ga., 470.

NORVAL, J.

This is an original application for *mandamus* to compel the respondent, Martin Howe, county clerk of Lancaster county, to reconvene the canvassing board and correctly canvass the returns of the votes cast at the last general election for justice of the peace in the Third district of the city of Lincoln and to issue to relator a certificate of election to said office.

The allegations of the petition are as follows:

"First—That the city of Lincoln is a city of the first class, a municipal corporation organized and existing under

the general laws of the state of Nebraska, and is divided into six wards, numbered from one to six respectively. For the purpose of election of justices of the peace said city is divided into three districts, numbered from one to three; that the first of said districts is composed of the First and Third wards of said city; that the second of said districts is composed of the Second and Fifth wards of said city; that the third of said districts is composed of the Fourth and Sixth wards of said city; that said Fourth ward is divided into two election districts or voting precincts, designated as 'A' and ' B' respectively; that said Sixth ward is divided into two election districts or voting precincts, designated as 'A' and ' B' respectively.

" Second—That Martin L. Easterday, the relator herein, is a citizen of the United States, a resident of the Sixth ward of said city, and of the Third district as aforesaid, and a legal voter therein, and has been for more than three years last past, and is competent to qualify for the office of justice of the peace.

" Third.—That at a regular annual election held in said city on the fifth day of November, 1889, the said relator was the regular nominee and candidate for justice of the peace in and for said Third district in said city upon the democratic, prohibition, and union labor tickets; that one Charles H. Foxworthy was the regular nominee and candidate upon the republican ticket for the office of justice of the peace in and for the Third district; and there were no other nominees or candidates for the said office in said district, nor were any other persons voted for for justice of the peace of the Third district, nor were there any other candidates for the office of justice of the peace residing in said district.

" Fourth—That by the returns of the judges of election, and the election boards of the various voting precincts in said Third district, made to the county clerk of Lancaster county, the respondent in this case, it was shown that un-

der the head of 'justice of the peace for the Third district,' there were cast in 'A' precinct of the Fourth ward, for M. L. Easterday, the relator herein, 144 votes; for C. H. Foxworthy, 200 votes; that under the head of 'justice of the peace' there were cast in said district for M. L. Easterday, the relator herein, as follows:

'A' precinct, Fourth ward.......................... 17 votes
'B' precinct, Fourth ward.......................... 134 votes
'A' precinct, Sixth ward........................... 200 votes
'B' precinct, Sixth ward........................... 114 votes

"That under the head of 'justice of the peace' there were cast in said district for C. H. Foxworthy as follows:

'A' precinct, Fourth ward.......................... None
'B' precinct, Fourth ward.......................... 200 votes
'A' precinct, Sixth ward........................... 137 votes
'B' precinct, Sixth ward........................... 68 votes

"That under the head of 'justice of the peace for the First district' there were cast in said Third district for said M. L. Easterday, three votes; for C. H. Foxworthy, none; that the votes cast for M. L. Easterday, the relator herein, and returned for him as follows: 144 votes for 'justice of the peace of the Third district,' 465 votes for 'justice of the peace,' and three votes for 'justice of the peace for the First district'—total, 612, were all cast for the said M. L. Easterday and intended for him and returned for him as 'justice of the peace for the Third district,' and should all be added together as his vote for the said office; that the 200 votes as above set forth returned for C. H. Foxworthy for 'justice of the peace for the Third district,' and the 405 votes returned for said Foxworthy for 'justice of the peace' were voted for, intended for, and returned for said Foxworthy as 'justice of the peace for the Third district,' and should be added together, making a total vote of 605 for him for the office of 'justice of the peace for Third district;' that thereby the said M. L. Easterday received a majority of seven votes, and was duly elected to the office

of justice of the peace in and for said Third district in the city of Lincoln for the term of two years next ensuing.

"Fifth—That the respondent, Martin Howe, is county clerk for Lancaster county, state of Nebraska, and has been since the 21st day of November, 1889; that it is the duty of the respondent, as county clerk as aforesaid, to call to his aid two electors of the said county and to correctly canvass the votes for justice of the peace for said Third district as returned by the election boards and judges of the various voting precincts of said district, to make all additions and computations necessary to determine which candidate received a majority of the votes cast for said office, to declare the candidate receiving a majority of said votes elected to said office, and to issue to said candidate a certificate of election. The relator, on or about the 6th day of December, 1889, demanded of said respondent, Martin Howe, county clerk of Lancaster county, that he reconvene the canvassing board which canvassed the votes cast in said Third district, and correctly canvass the votes so cast and returned, and add together the votes cast for relator and said C. H. Foxworthy, each, under the various heads of 'justice of the peace for the Third district,' 'justice of the peace,' and 'justice of the peace for the First district,' and declare the said relator duly elected justice of the peace in and for said Third district, and at said time demanded of the said respondent that he issue to him, the relator herein, a certificate of election, as required by law, each and every one of which demands the respondent, Martin Howe, refused to comply with; relator also demanded on said day that the said respondent call to his aid two electors of said county and canvass the votes returned for justice of the peace in said district, at the said election, and add together the votes cast for relator and said C. H. Foxworthy, each, and returned under the various heads of 'justice of the peace of the Third district,' 'justice of the peace,' and 'justice of the peace for the First district,'

and declare the relator duly elected to the office of the justice of the peace for the Third district, and issue to him a certificate of election according to law; each and every one of which demands the said respondent refused to comply with, and disregarding his duties as above set forth, failed and refused, and still refuses to call to his aid the said electors or reconvene said board, and correctly canvass the votes returned for said office, and declare the said relator elected to said office, and issue to him a certificate of election.

"Sixth—That prior to the 21st day of November, 1889, one O. C. Bell was county clerk of Lancaster county, Nebraska, and contrary to his duties as county clerk, as above set forth, the said O. C. Bell called to his aid two electors of said county and made a pretended canvass of said vote, and in said pretended canvass refused to canvass, count, and add together the 144 votes, the 465 votes, and the 3 votes returned as aforesaid for relator, and refused to declare the said relator duly elected justice of the peace for said Third district, and refused to deliver a certificate of election to said relator; that on or about the 8th day of November, 1889, the relator herein demanded of said O. C. Bell, the then county clerk of Lancaster county, and of the canvassing board by him convened and then in session, that he and they add together all votes cast for relator herein in said Third district and returned as aforesaid under the heads of 'justice of the peace,' 'justice of the peace of the Third district,' and 'justice of the peace of the First district.' Relator also on said day demanded of said O. C. Bell and the said canvassing board that he and they declare him, the relator, duly elected to the office of justice of the peace for the said Third district, and issue to him a certificate of election as justice of the peace for said Third district, but that each and every one of said demands of said relator was disregarded and refused by said O. C. Bell and the said canvassing board, contrary to their duty as afore-

said; and the said O. C. Bell, county clerk, together with one of said electors, declared the election of C. H. Foxworthy to said office, contrary to their duty, to the facts, the returns, and to the rights of relator, and thereupon the county clerk issued to said Foxworthy a certificate of election to said office."

The answer of the respondent, after admitting the allegations of the petition, contains the following averments:

"That prior to the commencement of this action and after issuance of said certificate, and within the time allowed by law therefor, said Chas. H. Foxworthy did, on the 21st day of November, 1889, execute, in due form of law, and as by law required, his bond as justice of the peace for said Third district, in the sum of $500 with sureties, as required by law, and presented the same on said 21st day of November, 1889, to the board of county commissioners for approval, as by law required, and did, on said 21st day of November, 1889, take and subscribe the oath of office required by law to be taken and subscribed by a justice of the peace; that afterwards, to-wit, on the 12th day of December, 1889, but prior to the commencement of this action, said bond of said Foxworthy, with said oath of office thereto attached, was duly, as by law required, approved by the board of county commissioners of said county, and thereupon, on the 12th day of December, 1889, was duly filed for record in the office of this respondent county clerk as aforesaid, and duly recorded; whereupon, and prior to the commencement of this action, said Chas. H. Foxworthy duly became the justice of the peace for the Third district of said city, and then and prior to the commencement of this action, said Foxworthy was and still is holding said office.

"This respondent represents and shows to the court that if the peremptory writ of *mandamus* prayed for in said petition issues, and this respondent be commanded to issue a certificate of election to said Easterday for said office, a

cloud will be cast upon the title of said Foxworthy thereto, and the administration of law in said city will be impaired and impeded; that since the election and qualification of said Foxworthy he has provided himself with a suitable office in the Fourth ward of the city of Lincoln, and with the docket provided by law to be kept by justices, and has entered upon the active discharge of duties of justice of the peace as provided by law, and has issued various and numerous summonses in the regular course of his duty and has collected moneys in settlement of suits, and done and performed various other official acts in the discharge of his said duties as such justice as aforesaid.

" This respondent, further answering said petition, represents and shows to the court that, by the law governing cities of the first class, to-wit, chapter 13a, Compiled Statutes 1889, page 157, it is provided in section 11 that in cities of the first class only two justices of the peace shall be elected by the whole city at large; that in sec. 7, chap. 26, Comp. Stats. 1889, page 451, it is provided that said cities shall be, by the county board, divided into three districts, and a justice of the peace be elected from each district; that by reason of the conflict between said laws it was uncertain and not known under which law said election for justice of the peace should be conducted; that, as will be seen from an inspection of the exhibit hereto attached, said Easterday and said Foxworthy had votes returned for each from nearly every voting precinct in the city; that said canvassing board canvassed and tabulated the returns as shown, and by an inspection thereof it will be seen that Foxworthy received over Easterday a majority in the city at large for the office of ' justice of the peace' 592 votes, and in the Fourth and Sixth wards said Foxworthy received over said Easterday a majority of fifty-six votes for the office of ' justice of the peace for the Third district,' and that said canvassing board, by a majority vote, issued the certificate of election accordingly to said Foxworthy.

40

"For further and second defense to said petition of said Easterday the respondent avers and says that after said general election, and duly at the time and as by law required, said Bell, county clerk as aforesaid, called to his aid Wm. Gillespie and Lem Tibbitts, two electors of said county, to constitute with said Bell the board to canvass the returns of said election; that said board thereupon duly and as by law required proceeded to canvass and did canvass said returns and count the same in the exact manner in which said returns came from the various election boards of the several precincts of said city and county, and fully and completely discharged the duties devolving upon them by law as a canvassing board, all of which is fully and explicitly shown by the certified abstract of votes in said city at said general election for said office of justice of the peace as returned by said election board, hereto attached and made a part of this answer."

To the answer is attached an abstract of all the votes cast for justice of the peace at said election in the entire city of Lincoln. The cause is submitted on a general demurrer to the answer.

Section 11 of an act entitled "An act to incorporate cities of the first class and regulating their duties, powers, government, and remedies," which took effect March 29, 1889, provides that "every such city shall constitute a district for the election of justices of the peace and constables, and in every such district there shall be elected two justices of the peace and two constables at the time provided by law for the election of such officers in other districts." (Comp. Stats. 1889, page 158, sec. 11.)

On the 30th day of March, 1889, section 7 of chapter 26, entitled "Elections," was amended so as to read as follows: "That in all cities of the first class there shall be but three justices of the peace, and no more, for each of such cities, and for the purpose of establishing this plan it shall be the duty of the county board of the county in

which such city or cities shall be situated, on or before the first day of September, * * * to divide such city into three districts, numbered respectively one (1), two (2), and three (3), and shall be composed of two or more wards or voting districts, as the case may be, comprising compact and contiguous territory, and embracing, as near as may be possible, one-third ($\frac{1}{3}$) of the population of such city, and not subject to alteration oftener than once in four (4) years, and one justice of the peace shall be elected from each of said districts by the qualified electors of said district, who shall provide and maintain an office or place for holding court in the district in which he shall have been elected."

It appears from the allegations of the petition, which are admitted by the answer, that the city of Lincoln is divided into six wards, numbered from one to six respectively; that for the purpose of the election of justices of the peace said city is divided into three districts, numbered from one to three; that the Third district is composed of the Fourth and Sixth wards of said city; that the relator and Mr. Foxworthy reside in said Third district; that votes were cast and returned at said election for relator and Mr. Foxworthy from nearly every voting precinct in the city, and that the said Foxworthy received over Easterday a majority of the votes cast in the city for the office of justice of the peace. It is therefore necessary to determine which of the above quoted acts of the legislature is in force and governed said election. If the act last quoted did not govern, then it is clear the relator was not elected. The first act provides for the election of two justices of the peace and that they shall be elected by the electors of the entire city, while the latter act provides for three justices of the peace to be elected by the electors by districts. These acts are inconsistent with each other, and both cannot be given effect. Under a familiar rule in the construction of statutes which are so clearly inconsistent with and repugnant to each other that both cannot be executed, the last act in

point of time prevails. (*White v. The City of Lincoln,* 5 Neb., 505 ; *Brown v. County Commissioners,* 21 Penn. St., 37.) It follows that the act of March 30, 1889, is the prevailing one and that the city of Lincoln is entitled to three justices of the peace, one to be elected from each of three districts by the qualified electors of said district.

The answer states that in the Third district of the city of Lincoln, "For justice of the peace for the Third district" the relator Easterday received 144 votes, and Charles H. Foxworthy received 200 votes ; that in said Third district "For justice of the peace," 465 votes were cast for said Easterday, and 405 votes were cast for said Foxworthy, and in said Third district, 3 votes were cast for said Easterday "For justice of the peace for the *First* district." The canvassing board refused to add together and count as votes cast for said Easterday the 144 votes cast for him "For justice of the peace for the Third district," the 465 votes cast for him "For justice of the peace," and the 3 votes cast for him "For justice of the peace for the *First* district." The said board likewise refused to add together and count as votes cast for said Foxworthy the 200 votes cast for him "For justice of the peace for the Third district" and the 405 votes cast for him "For justice of the peace." It is contended that *mandamus* will not lie to compel the counting for relator the three votes cast for him "For justice of the peace of the First district." No doubt these votes would be counted for relator on a hearing in case of contest. (*Coffey v. Edmonds,* 58 Cal., 521 ; *Inglis v. Shepherd,* 67 Id., 469; *Dean v. Field,* 5 Cong. Election Cases, 190.) While these ballots designated the wrong district, yet being cast in the Third district where relator was a candidate for justice of the peace, they certainly show that the voters intended to vote for the relator for justice of the peace of the district in which they were cast; the words *First district,* did not, as as we think, constitute a part of the legal designation of

the office.   They should be treated as surplusage, and these ballots should be counted for relator.   It is true the canvassing board act ministerially, yet the performance of ministerial duties often requires the exercise of intelligence, sense, and judgment.   It requires no judicial powers to determine the intention of the voters in casting these ballots.   The rule governing the canvassing of returns has been stated thus :

" The action of such boards is to be carefully confined to an examination of the papers before them and a determination of the result therefrom in the light of such facts of public notoriety connected with the election as every one takes notice of and which may enable them to apply such ballots as are in any respect imperfect to the proper candidates or officers for which they are intended, provided the intent is sufficiently indicated by the ballot in connection with such facts, so that extraneous evidence is not necessary for this purpose." (Cooley's Con. Lim. [5th Ed.], 784.

The next question in the case is this, Should the ballots cast for relator in the Third district of Lincoln " For justice of the peace " be added to those cast for him in said Third district " For justice of the peace for the Third district"?   This question has already been practically answered in the affirmative elsewhere in this discussion.

In addition to what has already been stated we will add that we do not think it essential that ballots cast for the office of justice of the peace in the city of Lincoln should designate the district, any more than a ballot cast for a justice of the peace in the country precincts should name the precinct.   The law calls these officers "justices of the peace" and a ballot so naming them sufficiently designates the office.   The ballots cast in the Third district of the city of Lincoln " For justice of the peace of the Third district " sufficiently designated the office and were legal ballots.   It cannot be claimed that either of the designa-

tions " For justice of the peace " and " For justice of the peace of the Third district " were so vague and uncertain as not to disclose the purpose of the voter. The language used leaves no doubt of the voters' intention. It follows that the votes cast for the relator in the Third district of the city of Lincoln " For justice of the peace," " For justice of the peace for the Third district," and " For justice of the peace for the First district," should be counted for relator and that the votes cast for Mr. Foxworthy in the Third district " For justice of the peace " and " For justice of the peace for the Third district " should also be counted for Mr. Foxworthy.

It is contended that as a certificate of election has been issued to Foxworthy, and he has qualified and entered upon the discharge of the duties of justice of the peace, *mandamus* will not lie to compel the board of canvassers to reassemble and canvass the returns. While the respondent cites a number of authorities sustaining his position, we will follow the rule heretofore adopted by this court, holding that *mandamus* is the proper remedy. (*State, ex rel. Willard, v. Stearns*, 11 Neb., 104; *State, ex rel. Romig, v. Wilson*, 24 Id., 139.)

It is urged that on account of the conflict in the statutes herein quoted, it was uncertain and not known under which law said election should be held, and that votes were returned for Foxworthy and Easterday from nearly every voting precinct in the city. Certainly this does not constitute a defense. The fact that some of the voters did not know which of the above quoted sections of the statute was in force, and improperly cast votes for relator and Foxworthy in the First and Second districts of the city of Lincoln, would be no valid excuse for refusing to count the legal ballots that were cast for them by the voters of the proper district.

In our view, the answer of the respondent fails to state

facts sufficient to prevent the issuing of the writ, and the demurrer to the answer is therefore sustained.

JUDGMENT ACCORDINGLY.

THE other judges concur.